# EXHIBIT A

FILED
2025 APR 10 02:18 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-11215-2 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| ROBERT CLARK, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| WHITEPAGES, INC, a Delaware corporation, | |
| Defendant. | |

Plaintiff Robert Clark ("Plaintiff") individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendant Whitepages, Inc ("Whitepages" or "Defendant"). Plaintiff makes the following allegations pursuant to his counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## I.    NATURE OF ACTION

1.      On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a

---

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open. *See also* https://leg.colorado.gov/sites/default/files/images/olls/2005a_sl_180.pdf.

CLASS ACTION COMPLAINT - 1

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

directory, without permission.[2] *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2.     This prohibition is designed to protect privacy. As former State Representative Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3.     Indeed, concern over cell phone privacy is widespread. According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …
>
> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish to restrict access to their cell phone number to family and friends.[8]

4.     The Colorado General Assembly enacted subsection (4) of the PTFA to address these privacy concerns and to protect cell phone users from the misappropriation of their personal information. This aligns with the PTFA's overall purpose, as articulated by Colo. Rev. Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of

---

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.

[3] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.

[4] https://lawcollections.colorado.edu/colorado-session-laws/islandora/object/session%3A36205 at p. 2461. *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.

[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.

[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=l2jkzr0AAAAJ&citation_for_view=l2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.

[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

5.      Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

(a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

6.      Despite this abundantly clear proscription, Defendant has listed the cellular telephone numbers of thousands of Colorado residents in its for-sale and for-profit directories, without requesting (let alone actually receiving) affirmative consent to such listings.

7.      Thus, while Defendant profits handsomely from its unauthorized commercial listing of Plaintiff's and other Class Members' personal information, it does so at the expense of Coloradans' statutory privacy rights, under the PTFA.

8.      Not only is Defendant's misappropriation unlawful – it is also dangerous. The Federal Trade Commission's ("FTC") report on "Data Brokers" states:

There are a number of potential risks to consumers from data brokers' collection and use of consumer data. … [T]hey may facilitate the sending of advertisements … which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, … people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely [m]ay [c]reate [s]ecurity [r]isks[.][9]

9.      Plaintiff brings this action to prevent Defendant from further violating the privacy rights of Colorado cell phone users and to recover statutory damages from Defendant, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

---

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

CLASS ACTION COMPLAINT - 3

## II.    PARTIES

10.    Plaintiff Robert Clark is a resident and citizen of Colorado Springs, Colorado. Plaintiff's cellular telephone number was listed by Defendant in its directory, available at whitepages.com, to advertise and/or actually sell products and services. Defendant never requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listing. In fact, Plaintiff has no relationship with Defendant whatsoever. Plaintiff had never heard of Defendant and had no reasonable ability to discover Defendant's use of his personal information until shortly before filing suit.

11.    Defendant Whitepages, Inc is a Delaware corporation with its principal place of business at 2033 6th Avenue, Suite 1100, Seattle, Washington 98121. Defendant operates the directory whitepages.com. Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

## III.    JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action pursuant to RCW 2.08.010.

13.    This Court has personal jurisdiction over Defendant because it maintains its principal place of business in King County, Washington.

14.    Venue is proper in this Court pursuant to RCW 4.12.025 because Defendant resides in King County, Washington.

## IV.    FACTUAL ALLEGATIONS

**A.    Overview of Defendant's Directory**

15.    Defendant is a data broker – a company "that collect[s] consumers' personal information and resell[s] or share[s] that information with others[.]"[10]

16.    Specifically, Defendant provides online "people search" (also known as "people finder") services. People search companies, like Defendant, specialize in compiling vast amounts

---

[10] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

CLASS ACTION COMPLAINT - 4

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

of information about individuals from various sources.[11]

17.    Defendant and its competitors monetize said personal details through their directories – some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee.

18.    Defendant's directory is available at whitepages.com. There, anyone on the Internet can view Coloradans' "verified phone numbers, home addresses, email addresses, relatives, property records, background reports, and more."[12]

19.    This is achieved by simply searching an individual by name, city, state, phone number, address, and/or other parameters:[13]



20.    Users of whitepages.com can also find people listed by last name and city (i.e., those with the surname of "Anderson" in Denver):[14]

//

//

[11] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.
[12] https://www.whitepages.com/people-search.
[13] *Id.*
[14] https://www.whitepages.com/white-pages/denver-co/a.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711



21.     After entering this information, a whitepages.com user is furnished a list of search results. Each result corresponds to an actual person that Defendant has located who matches the searched parameters.[15]

---

[15] Note, in this image of whitepages.com's search results, Plaintiff's counsel has redacted certain sensitive personal information (black portions). Defendant, itself, also blurs certain information (pixelated portions) to entice users to purchase Defendant's full background reports and gain complete access.

CLASS ACTION COMPLAINT - 6

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

22.     Upon selecting a particular person to investigate from the search results, a whitepages.com user can access a free, limited preview of Defendant's paid, full background reports. Whitepages.com free, limited previews include searched individuals' cell phone number(s) and a plethora of other identifying information.[16]

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

---

[16] Note, in this image of whitepages.com's free, limited preview, Plaintiff's counsel has redacted certain sensitive personal information (blue portions). Defendant, itself, also blurs certain information (pixelated portions) to entice users to purchase Defendant's full background reports and gain complete access.

CLASS ACTION COMPLAINT - 7

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

23.    Defendant also makes available paid, full background reports that do not redact or blur searched individuals' sensitive personal information whatsoever – including cell phone numbers. Instead, they offer a comprehensive view into said individuals' private details.[17]

---

[17] Note, in this image of whitepages.com's paid, full background report, Plaintiff's counsel has redacted certain sensitive personal information (black portions).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

24.     As the above images of whitepages.com make clear, Defendant knowingly lists Coloradans' cell phone numbers. On whitepages.com, Defendant states: "We found [] verified phone numbers for [a particular person]. Phone numbers include both cell phones and landlines." Defendant encourages users to "View Cell Phone Numbers[.]" And Defendant does, in fact, provide phone numbers for what it correctly labels "Cell Phones."

25.     The purpose behind listing individuals' personal information – including cell phone numbers – on whitepages.com is twofold.

26.     First, listing said information helps Defendant generate ad revenue. Defendant advertises how pages are "Sponsored by Ancestry.com" (which, on information and belief, pays Defendant for that distinction), and Defendant advertises other third-parties' products and services (here, pet food being sold on Amazon).



**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

27.     Second, listing said information helps Defendant entice users to acquire access to Defendant's paid, full background reports.

28.     To acquire a full background report from Defendant, a whitepages.com user can either (a) pay a one-time fee of $11.99 for a single report or (b) pay a monthly subscription fee ranging from $5.99 per month to $109.99 per month:[18]



29.     Users can also access a 5-day trial membership for $1:



---

[18] https://www.whitepages.com/checkout/pricing.

CLASS ACTION COMPLAINT - 11

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

30.     Thus, the listing of Plaintiff's and Class Members' cell phone numbers is for a commercial purpose. Indeed, that is Defendant's entire business model. Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers and subscribers.

**B.     Defendant's Conduct Harms Coloradans**

31.     Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[19] Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[20]

32.     In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their personal data.[21]

33.     These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data. Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their data.[22] A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing business with companies who they believe do not protect their

---

[19] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.
[20] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.
[21] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.
[22] *See, e.g.*, https://web.archive.org/web/20240420201259/https://www.enisa.europa.eu/publications/monetising-privacy/@@download/fullReport; https://citeseerx.ist.psu.edu/document?repid=rep1&type=pdf&doi=8b70320d110370c82ca9cbab768db58b74878234.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

privacy.[23] The same is true for 80 percent of smartphone users, who say that they avoid using smartphone apps that they don't believe protect their privacy.[24]

34.     Defendant's misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights. It also deprives them of the real, quantifiable value of such data.

35.     Further, "[p]eople search sites … offer a wealth of information that can be exploited by malicious actors."[25] For one, "[b]undling [personal data] all together and making it so easily accessible can … put ordinary people at risk of … stalking and other forms of harassment."[26] Second, people search sites' "comprehensive data allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[27] This "put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[28]

36.     Information disclosures like Defendant's are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[29] The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[30]

37.     Making matters worse, "[o]nce marked as receptive to [a specific] type of spam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[31]

---

[23] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ ConsumerConfidenceReport_US1.pdf at p. 3.
[24] *Id.*
[25] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.
[26] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.
[27] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.
[28] http://www.nytimes.com/2007/05/20/business/20tele.html.
[29] *Id.*
[30] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.
[31] *Id.* at p. 3.

CLASS ACTION COMPLAINT - 13

## V.     CLASS ALLEGATIONS

38.     Pursuant to CR 23, Plaintiff seeks to represent a class defined as all Colorado residents whose cell phone numbers were listed on whitepages.com (the "Class").

39.     Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

40.     **Numerosity:** The Class is composed of at least thousands of individuals, the joinder of which in one action would be impracticable. The disposition of their claims through this class action will benefit both the parties and the Court.

41.     **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class. The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class Members. Such questions include, but are not limited to, the following: whether Defendant violated Colo. Rev. Stat. § 6-1-304(4)(a)(I); and whether Plaintiff and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

42.     **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because Plaintiff, like all other Class Members, had his cell phone number listed on whitepages.com for a commercial purpose; Defendant did so without requesting or receiving Plaintiff's affirmative consent (through written, oral, or electronic means); and Defendant's misappropriation of Plaintiff's personal data (including the economic value thereof) came at the expense of Plaintiff's PTFA privacy rights.

43.     **Adequacy:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

44.     **Superiority:** The class mechanism is superior to other available means for the fair

CLASS ACTION COMPLAINT - 14

and efficient adjudication of the claims of Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## VI.    CAUSE OF ACTION

### COUNT I
### VIOLATION OF THE PREVENTION OF TELEMARKETING FRAUD ACT, COLO. REV. STAT. § 6-1-304(4)(a)(I)

45.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

47.    Colo. Rev. Stat. § 6-1-304(4) provides:

(a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

48.    Defendant failed to comply with this PTFA mandate.

49.    Defendant knowingly lists Coloradans' cell phone numbers. On whitepages.com, Defendant states: "We found [] verified phone numbers for [a particular person]. Phone numbers include both cell phones and landlines." Defendant encourages users to "View Cell Phone

CLASS ACTION COMPLAINT - 15

Numbers[.]" And Defendant indeed provides phone numbers for what it correctly labels "Cell Phones."

50.    Defendant's website, whitepages.com, is a directory – i.e., an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area[.]"[32] Defendant admits as much, referring to whitepages.com as a "directory service";[33] advertising that it offers "the most accurate online directory of contact information";[34] and titling pages with the word "directory."[35]

51.    Defendant engages in this conduct for a commercial purpose. The purpose behind listing individuals' personal information – including cell phone numbers – on whitepages.com is to generate ad revenue and entice users to acquire access to Defendant's paid, full background reports.

52.    Defendant never requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing[.]" Colo. Rev. Stat. § 6-1-304(4)(a)(I). Rather, Defendant lists the cell phone numbers of Coloradans it has never engaged with, has had no connection to, and who are unaware of its existence.

53.    Defendant's misappropriation of Class Members' personal data (including the economic value thereof) came at the expense of Class Members' PTFA privacy rights. It deprived Class Members of the real, quantifiable value of such data. And it exposed Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing.

54.    Thus, on behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3)

---

[32] *Directory*, Oxford Learner's Dictionary, https://oxfordlearnersdictionaries.com/us/definition/english/directory. *See also Directory*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, Cambridge Essential American English Dictionary, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, AllWords.com Multi-Lingual Dictionary, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").
[33] https://www.whitepages.com/privacy.
[34] https://www.whitepages.com/reverse-phone.
[35] *See, e.g.*, https://www.whitepages.com/white-pages/denver-co; https://www.whitepages.com/directory/name.

CLASS ACTION COMPLAINT - 16

damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

55.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

56.    Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

57.    Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

58.    Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with the PTFA;

59.    Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

60.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

61.    Awarding such other and further relief as equity and justice may require.

//
//
//
//

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

Dated: April 10, 2025

Respectfully submitted,

**EMERY REDDY PLLC**

By: */s/ Timothy W. Emery*
Timothy W. Emery, WSBA No. 34078
Patrick B. Reddy, WSBA No. 34092
Paul Cipriani, WSBA No. 59991
600 Stewart St., Suite 1100
Seattle, WA 98101
Telephone: (206) 442-9106
Facsimile: (206) 441-9711
Email: emeryt@emeryreddy.com
Email: reddyp@emeryreddy.com
Email: paul@emeryreddy.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice* forthcoming)
Matthew A. Girardi (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
Email: mgirardi@bursor.com

*Attorneys for Plaintiff*

**FILED**
2025 APR 10 02:18 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-11215-2 SEA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR THE COUNTY OF KING

| | |
|---|---|
| CLARK | No. 25-2-11215-2  SEA |
| VS. | **ORDER SETTING CIVIL CASE SCHEDULE** |
| WHITEPAGES, INC. | **ASSIGNED JUDGE: Sean O'Donnell, Dept. 29**<br>FILED DATE: 04/10/2025<br>TRIAL DATE:04/13/2026 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:**
The Plaintiff may serve a copy of this **Order Setting Case Schedule (*Schedule*)** on the Defendant(s) along with the ***Summons and Complaint/Petition***.  Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the ***Summons and Complaint/Petition*** or (2) service of the Defendant's first response to the ***Complaint/Petition***, whether that response is a ***Notice of Appearance***, a response, or a Civil Rule 12 (CR 12) motion.  The ***Schedule*** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this ***Schedule***. In order to comply with the ***Schedule***, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**You are required to give a copy of these documents to all parties in this case.**

## I. NOTICES (continued)

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD-PARTY COMPLAINTS:**
A filing fee of **$240** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of <u>all parties and claims</u> is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses*. When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING <u>AND</u> TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and crossclaims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $250 arbitration fee**. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $400 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
**All** parties will be assessed a fee authorized by King County Code 4A.630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements <u>and/or</u> Local Civil Rule 41.

**King County Local Rules are available for viewing at <u>www.kingcounty.gov/courts/clerk.</u>**

## II. CASE SCHEDULE

| * | CASE EVENT | EVENT DATE |
|---|---|---|
|  | Case Filed and Schedule Issued. | 04/10/2025 |
| * | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*]. **$250 arbitration fee must be paid** | 09/18/2025 |
| * | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [*See KCLCR 4.2(a) and Notices on Page 2*]. | 09/18/2025 |
|  | **DEADLINE** for Hearing Motions to Change Case Assignment Area [*KCLCR 82(e)*]. | 10/02/2025 |
|  | **DEADLINE** for Disclosure of Possible Primary Witnesses [*See KCLCR 26(k)*]. | 11/10/2025 |
|  | **DEADLINE** for Disclosure of Possible Additional Witnesses [*See KCLCR 26(k)*]. | 12/22/2025 |
|  | **DEADLINE** for Jury Demand [*See KCLCR 38(b)(2)*]. | 01/05/2026 |
|  | **DEADLINE** for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | 01/05/2026 |
|  | **DEADLINE** for Discovery Cutoff [*See KCLCR 37(g)*]. | 02/23/2026 |
|  | **DEADLINE** for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | 03/16/2026 |
|  | **DEADLINE**: Exchange Witness & Exhibit Lists & Documentary Exhibits [*KCLCR 4(j)*]. | 03/23/2026 |
| * | **DEADLINE** to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(1)*] | 03/23/2026 |
|  | **DEADLINE** for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | 03/30/2026 |
| * | Joint Statement of Evidence [*See KCLCR 4 (k)*] | 04/06/2026 |
|  | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusions of Law with the Clerk) | 04/06/2026 |
|  | Trial Date [*See KCLCR 40*]. | 04/13/2026 |

*The * indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.*

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above.  Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance.  It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

DATED:      04/10/2025

*Peta Shah*
_____
PRESIDING JUDGE

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:** Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**CASE SCHEDULE AND REQUIREMENTS:** Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

### A. Joint Confirmation regarding Trial Readiness Report
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g., interpreters, equipment).

The Joint Confirmation Regarding Trial Readiness form is available at www.kingcounty.gov/courts/scforms. If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding the report.

### B. Settlement/Mediation/ADR
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. **FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.**

### C. Trial
Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the court's civil standby calendar on the King County Superior Court website www.kingcounty.gov/courts/superiorcourt to confirm the trial judge assignment.

## MOTIONS PROCEDURES

### A. Noting of Motions

**Dispositive Motions:** All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Non-dispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements.

Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." Local Civil Rule 7 governs these motions, which include discovery motions. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

**Emergency Motions:** Under the court's local civil rules, emergency motions will usually be allowed only upon entry of an Order Shortening Time. However, some emergency motions may be brought in the Ex Parte and Probate Department as expressly authorized by local rule. In addition, discovery disputes may be addressed by telephone call and without written motion, if the judge approves in advance.

**B. Original Documents/Working Copies/ Filing of Documents: All original documents must be filed with the Clerk's Office.** Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court. The exceptions to the e-filing requirement are also available on the Clerk's Office website. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom. Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator. Working copies can be submitted through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk/documents/eWC.

**Service of documents:** Pursuant to Local General Rule 30(b)(4)(B), e-filed documents shall be electronically served through the e-Service feature within the Clerk's eFiling application. Pre-registration to accept e-service is required. E-Service generates a record of service document that can be e-filed. Please see the Clerk's office website at www.kingcounty.gov/courts/clerk/documents/efiling regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion. **Do not file the original of the proposed order with the Clerk of the Court.** Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order. The court may distribute orders electronically. Review the judge's website for information: www.kingcounty.gov/courts/SuperiorCourt/judges.

**Presentation of Orders for Signature:** All orders must be presented to the assigned judge or to the Ex Parte and Probate Department, in accordance with Local Civil Rules 40 and 40.1. Such orders, if presented to the Ex Parte and Probate Department, shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). If the assigned judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the Ex Parte and Probate Department.** Such orders shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. **If final order and/or formal proof are entered in the Ex Parte and Probate Department, counsel is responsible for providing the assigned judge with a copy.**

**C. Form**

Pursuant to Local Civil Rule 7(b)(5)(B), the initial motion and opposing memorandum shall not exceed 4,200 words and reply memoranda shall not exceed 1,750 words without authorization of the court. The word count includes all portions of the document, including headings and footnotes, except 1) the caption; 2) table of contents and/or authorities, if any; and 3): the signature block. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

***IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.***

_____
PRESIDING JUDGE

FILED
2025 APR 10 02:18 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-11215-2 SEA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR THE COUNTY OF KING

| | |
|---|---|
| CLARK<br><br>VS<br><br>WHITEPAGES, INC. | No. 25-2-11215-2  SEA<br><br>**CASE INFORMATION COVER SHEET AND AREA DESIGNATION**<br><br>(CICS) |

**CAUSE OF ACTION**

TTO - Tort /Other

**AREA OF DESIGNATION**

SEA          Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

**FILED**
2025 APR 10 02:18 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-11215-2 SEA

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING**

| CLARK | No. 25-2-11215-2  SEA |
|---|---|
| VS | **CASE INFORMATION COVER SHEET AND AREA DESIGNATION** |
| WHITEPAGES, INC. | |
| | (CICS) |

**CAUSE OF ACTION**

TTO - Tort /Other

**AREA OF DESIGNATION**

SEA         Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

**FILED**
2025 APR 10 02:18 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-11215-2 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| ROBERT CLARK, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | SUMMONS (20 DAYS) |
| v. | |
| WHITEPAGES, INC, a Delaware corporation, | |
| Defendant. | |

TO:    WHITEPAGES, INC.

A lawsuit has been started against you in the above entitled court by the above-captioned plaintiff.  Plaintiff's claims are stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond by stating your defense in writing, and serve a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice.  A default judgment is one where the plaintiff is entitled to what he asks for because you have not responded.  If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons.  Within

SUMMONS (20 DAYS) - 1

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of The State of Washington.

Dated: April 10, 2025                    Respectfully submitted,

**EMERY REDDY PLLC**

By: _/s/ Timothy W. Emery_____
      Timothy W. Emery, WSBA No. 34078
      Patrick B. Reddy, WSBA No. 34092
      Paul Cipriani, WSBA No. 59991
      600 Stewart St., Suite 1100
      Seattle, WA 98101
      Telephone: (206) 442-9106
      Facsimile: (206) 441-9711
      Email: emeryt@emeryreddy.com
      Email: reddyp@emeryreddy.com
      Email: paul@emeryreddy.com

**BURSOR & FISHER, P.A.**
      Joseph I. Marchese (*pro hac vice* forthcoming)
      Matthew A. Girardi (*pro hac vice* forthcoming)
      1330 Avenue of the Americas, 32nd Floor
      New York, NY
      Telephone: (646) 837-7127
      Facsimile: (212) 989-9163
      Email: ykopel@bursor.com
      Email: mgirardi@bursor.com

      *Attorneys for Plaintiff*

**FILED**

2025 APR 17
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 25-2-11215-2 SEA

SUPERIOR COURT, STATE OF WASHINGTON, COUNTY OF KING

| | |
|---|---|
| ROBERT CLARK, individually and on behalf of all others similarly situated, | NO. 25-2-11215-2 SEA |
| Plaintiff(s), | DECLARATION OF SERVICE OF: SUMMONS (20 DAYS); CLASS ACTION COMPLAINT; CASE INFORMATION COVER SHEET AND AREA DESIGNATION; ORDER SETTING CIVIL CASE SCHEDULE. |
| Vs. | |
| WHITEPAGES, INC, a Delaware corporation, | |
| Defendant(s). | |

STATE OF WASHINGTON
COUNTY OF KING

That I am now, and at all times herein mentioned, was a citizen of the United States and a resident of the State of Washington, over the age of 18 years, not a party to or interested in the above entitled action, and am competent to be a witness therein.

That at 11:02 A.M. on April 14th, 2025, at 711 Capitol Way South, Suite 204, Olympia, Washington, I duly served the above-described documents in the above-described matter upon Whitepages, Inc, by then and there personally delivering a true and correct copy thereof by leaving the same with Jeff Miner, Intake Specialist for CT Corporation System, its Registered Agent, who is authorized to receive service.

I declare under the penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

| | |
|---|---|
| Process Fee: 12.00 | Signed at Seattle, Washington, on __4/15/25__ |
| Prep: 10.00 | |
| Travel: 90.00 | |
| Bad Address: | |
| SSA: | |
| Wait: | |
| Special Fee: | |
| Declaration Fee: 12.00 | |

TOTAL   $124.00

RICHARD KOHNENBERGER    KING CO. # 0203336

FILED
2025 APR 10 02:18 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-11215-2 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

ROBERT CLARK, individually and on behalf
of all others similarly situated,

                         Plaintiff,

     v.

WHITEPAGES, INC, a Delaware corporation,

                    Defendant.

No.

SUMMONS (20 DAYS)

TO:    WHITEPAGES, INC.

    A lawsuit has been started against you in the above entitled court by the above-captioned plaintiff. Plaintiff's claims are stated in the written complaint, a copy of which is served upon you with this summons.

    In order to defend against this lawsuit, you must respond by stating your defense in writing, and serve a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where the plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

    You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within

SUMMONS (20 DAYS) - 1

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

THE HONORABLE SEAN P. O'DONNELL

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| ROBERT CLARK, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>WHITEPAGES, INC, a Delaware corporation,<br><br>Defendant. | CASE NO. 25-2-11215-2 SEA<br><br>**DEFENDANT WHITEPAGES, INC'S NOTICE OF FILING OF NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>**[CLERK'S ACTION REQUIRED]** |

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

TO:          THE CLERK OF THIS COURT;

AND TO:      ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** defendant Whitepages, Inc. ("Whitepages") filed a Notice of Removal of this action in the United States District Court for the Western District of Washington, Seattle Division, on May 2, 2025.

A true and correct copy of that Notice of Removal and the related documents filed in the United States District Court for the Western District of Washington is attached hereto as **Exhibit 1**. All parties have been given notice of the removal.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to 28 U.S.C. § 1446(d), the filing of the Notice of Removal in the United States District Court for the Western District of Washington, Seattle Division, together with the filing of a copy of the notice in this Court, "shall effect the removal" of this action and divests this Court of jurisdiction, and this Honorable Court "shall proceed no further unless and until the case is remanded."

RESPECTFULLY SUBMITTED this May 2, 2025.


**GOLDFARB & HUCK ROTH RIOJAS, PLLC**


*/s/ Kimberlee L. Gunning*
Kimberlee L. Gunning, WSBA No. 35366
R. Omar Riojas, WSBA No. 35400
925 Fourth Avenue, Suite 3950
Seattle, WA  98104
Telephone: 206.452.0260
Email: gunning@goldfarb-huck.com
          riojas@goldfarb-huck.com

*Attorneys for Defendant Whitepages, Inc.*

NOTICE OF REMOVAL - 2
CASE NO. 25-2-11215-2 SEA

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1

## <u>CERTIFICATE OF SERVICE</u>

2

I certify that a copy of the foregoing document was served as stated below:

3

| | |
|---|---|
| Timothy W. Emery<br>Patrick B. Reddy<br>Paul Cipriani<br>Emery Reddy PLLC<br>600 Stewart St., Suite 1100<br>Seattle, WA 98101<br>Telephone: (206) 442-9106<br>Facsimile: (206) 441-9711<br>Email: emeryt@emeryreddy.com<br>        reddyp@emeryreddy.com<br>        paul@emeryreddy.com<br><br>Attorneys for Plaintiff | ☒ via ecf/email<br>☐ via legal messenger<br>☐ via US Mail<br>☐ via fax |
| Joseph I. Marchese (*pro hac vice* forthcoming)<br>Matthew A. Girardi (*pro hac vice* forthcoming)<br>Bursor & Fisher, P.A.<br>1330 Avenue of the Americas, 32nd Floor<br>New York, NY<br>Telephone: (646) 837-7127<br>Facsimile: (212) 989-9163<br>Email: ykopel@bursor.com<br>        mgirardi@bursor.com<br><br>Attorneys for Plaintiff | ☒ via ecf/email<br>☐ via legal messenger<br>☐ via US Mail<br>☐ via fax |

DATED this May 2, 2025.

*/s/ Marco Sanchez*
Marco Sanchez

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT CLARK, individually and on
behalf of all others similarly situated,

        Plaintiff

       v.

WHITEPAGES, INC, a Delaware
corporation,

        Defendant.

CASE NO.

**NOTICE OF REMOVAL**

NOTICE OF REMOVAL - 1
CASE NO.:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**TO:**              **THE CLERK OF THE COURT;**

**AND TO:**          **ALL PARTIES AND THEIR COUNSEL OF RECORD.**

**PLEASE TAKE NOTICE** that, for the reasons set forth below, defendant Whitepages, Inc. ("Whitepages"), removes this civil action, *Robert Clark v. Whitepages, Inc.*, Case No. 25-2-11215-2, from the Superior Court of the State of Washington in and for King County (the "State Court Action") to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and LCR 101.  In support of removal, Whitepages states as follows:

## I.    INTRODUCTION

On April 10, 2025, plaintiff Robert Clark, on behalf of himself and purportedly all others similarly situated, commenced the State Court Action against Whitepages.  A copy of Plaintiff's Complaint in the State Court Action is attached as **Exhibit A** to this Notice of Removal (the "Complaint").  Plaintiff purports to bring claims on behalf of a putative Colorado class for Whitepages' alleged violation of Colorado's Prevention of Telemarketing Fraud Act ("PTFA"), Colo. Rev. Stat. § 6-1-304, *et seq.*, claiming that Whitepages improperly listed cellular telephone numbers of Colorado residents without consent.  Ex. A at ¶ 6.

This Notice of Removal is based primarily on the allegations in the Complaint but does not admit the truth of those allegations, the validity of Plaintiff's claims, or entitlement to any form of relief.  Rather, Whitepages expressly denies that Plaintiff and the putative class are entitled to any relief, and Whitepages reserves all rights.

## II.    LEGAL STANDARD

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992-96 (9th Cir. 2022) (reversing remand, finding that no antiremoval presumption exists in Class Action Fairness Act ("CAFA") cases, and holding that district court erred in its assessment

NOTICE OF REMOVAL - 2
CASE NO.:

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

of CAFA amount in controversy). "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the pleading requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'" *Dart*, 574 U.S. at 87 (alteration in original). No evidentiary support is required for removal. *Id.* at 84.

## III.    REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. § 1332(d)(2). As set forth below, this case may be removed pursuant to 28 U.S.C. § 1441(a) because the action is a putative class action in which at least one member is a citizen of a different state than Whitepages and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2) & (d)(6). Furthermore, the number of putative class members is greater than 100. 28 U.S.C. § 1332(d)(5)(B).

Counsel for Plaintiff previously filed a nearly identical lawsuit against Whitepages in the United States District Court for the District of Colorado, *Tucker v. Whitepages, Inc.*, Case No. 1:24-cv-03500 (D. Colo. 2024) (the "Colorado Case"), conceding jurisdiction under CAFA. **Exhibit B** attached hereto, ¶ 12 ("The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. 1332(d) *et seq.* in that the proposed Class consists of over 100 people, the Classes are minimally diverse, on information and belief more than $5 million is at issue, and none of the exceptions to CAFA jurisdiction applies."). As here, the Colorado Case alleged that Whitepages violated the PTFA by listing the cellular telephone numbers of Colorado residents without consent. *See id. generally*. In an apparent effort to avoid the judicial assignments in Colorado, Plaintiff's counsel voluntarily dismissed the Colorado Case and refiled a copycat complaint in the Superior Court in Washington using a different putative class representative. *See* Exs. A & B. As with the Colorado Case, this case is subject to CAFA jurisdiction.

### A.    Diversity of Citizenship

Under CAFA, sufficient diversity of citizenship exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C. § 1332(d)(2)(A).

According to Plaintiff's Complaint, he "is a resident and citizen of Colorado Springs, Colorado." Ex. A ¶ 10. Whitepages "is a Delaware corporation with its principal place of business at 2033 6th Avenue, Suite 1100, Seattle, Washington 98121." *Id.* ¶ 11. Whitepages thus is a citizen of Delaware and Washington. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). Accordingly, there is diversity under CAFA.

## B. Number of Class Members

Plaintiff purports to bring this action pursuant to the Colorado Rules of Civil Procedure, Rule 23, and estimates the proposed class includes "at least thousands of individuals." Ex. A ¶ 40. Based on this allegation, the aggregate number of class members in Plaintiff's proposed class exceeds 100 and satisfies 28 U.S.C. § 1332(d)(5).

## C. Amount In Controversy Exceeds $5,000,000.

Under CAFA, a district court aggregates the claims of individual class members to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(2), (d)(6); *see Dart*, 574 U.S. at 89 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and does not require evidentiary submissions); *see also Perez v. Rose Hills Co.*, 131 F.4th 804, 806-08 (9th Cir. 2025) (vacating district court remand after removal and remanding for further proceedings). As the Ninth Circuit held less than two months ago: "In calculating the amount in controversy, a removing defendant may make reasonable assumptions based on the plaintiff's complaint." *Perez*, 131 F.4th at 806. And as the Ninth Circuit reasoned three years earlier, the amount at stake for purposes of removal amount in controversy does not mean "probable liability"; it means "possible liability." *Jauregui*, 28 F.4th at 994.

In the Colorado Case, Plaintiff's counsel *already pled in excess of $5,000,000 in controversy*. *See* Ex. B at ¶ 12. That answers the amount-in-controversy question.

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

But even if it didn't, Plaintiff alleges that Whitepages violated PTFA § 6-1-304(4) and seeks to recover "at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense," as well as attorneys' fees and injunctive relief. Ex. A at ¶¶ 54, 57-59. Plaintiff thus alleges that he and the putative class have suffered (at a minimum) $300 in statutory damages per alleged offense. *Id.* at ¶¶ 54, 57-59. Even if these were the ***only*** damages used to calculate the amount in controversy, there would need to be only 16,667 members in the putative class and one violation each to exceed the $5,000,000 threshold. *See, e.g., Jauregui*, 28 F.4th at 994-95 (in reversing remand after removal, reasoning that the defendant had done plausible math in its notice of removal based on various assumptions, including one hour a week of unpaid work, 63,431 work weeks in question, multiplication by an average wage of $16.22, doubling for liquidated damages, and addition of potential penalties). The amount-in-controversy threshold is not limited to the statutory damages claim but also includes all other forms of potential relief, including the value of the injunctive relief sought, Ex. A at ¶¶ 56, 58, as well as attorneys' fees, *id.* at ¶ 59. *See, e.g., Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 771-75 (9th Cir. 2020) (reversing remand after removal and affirming the defendant's plausible calculation of amount in controversy based on theoretical compensatory and punitive damages, attorneys' fees, and injunctive relief).

Plaintiff seeks to "represent a class defined as all Colorado residents whose cell phone numbers were listed on whitepages.com. . . ." Ex. A at ¶ 38. Whitepages denies any violation of the PTFA and also denies that this matter is suitable for treatment as a class action. However, without admitting putative class size (which likely isn't even ascertainable), Whitepages notes that it is plausible that the purported class is at least 16,667 people. According to the 2024 U.S. Census, the population of the state of Colorado was 5,957,493.[1]  16,667 people would be 0.28 percent of the 2024 population of Colorado. From a plausibility perspective, the CAFA amount in

---

[1] *See* https://www.census.gov/quickfacts/fact/table/CO/PST045224 (last visited April 24, 2025).

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

controversy requirement is satisfied, particularly when all forms of relief sought are considered. The PTFA provides for consequential damages, court costs, attorneys' fees, and statutory penalties (all of which the putative class seeks). *See* Colo. Rev. Stat. § 6-1-305; *see also* Ex. A ¶¶ 54, 57-59. There's a reason Plaintiff's counsel pled greater than $5,000,000 in controversy in the Colorado Case. *See* Ex. B at ¶ 12.

## II.    THE EXCEPTIONS TO CAFA JURISDICTION DO NOT APPLY.

Plaintiff bears the burden of establishing any applicable exceptions to CAFA jurisdiction. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007). Plaintiff's counsel has already pled in the Colorado Case that none of the exceptions exists. *See* Ex. B ¶ 12. That admission should end the inquiry.

Regardless, CAFA provides one discretionary exception and two mandatory exceptions to application of federal jurisdiction. 28 U.S.C. §§ 1332(d)(3)-(4). But all three exceptions include the requirement that one-third or more of the members of the putative class are citizens of the state in which the action was originally filed. 28 U.S.C. §§ 1332(d)(3)-(4). Here, because Plaintiff alleges that the putative class is comprised exclusively of Colorado residents, Ex. A at ¶ 38, the Court can conclude that one-third or more of the putative class members are not citizens of Washington.

## III.   28 U.S.C. § 1446 REQUIREMENTS

Section 1446 also sets forth certain procedural requirements for removal, all of which are met here.

### A.    Venue for Purposes of Removal Is Proper

The proper venue for removed cases is the District embracing the county where the state court action was pending. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1446(a). The State Court Action was originally filed in the Superior Court of the State of Washington in and for King County. King County is within the jurisdiction of this District. That being written, Whitepages reserves all rights, including the right to challenge the filing of this suit after voluntary non-suit of the Colorado Case as paradigmatic of inappropriate judge-shopping and to move for an arbitrability-related stay.

NOTICE OF REMOVAL - 6
CASE NO.:

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

**B.**     **Removal Is Timely**

Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because it was filed within 30 days of April 14, 2025, the date Whitepages was served with the Summons and Complaint, and is made within one year after commencement of the action.

**C.**     **Pleadings and Process/Notice to State Court**

Consistent with 28 U.S.C. §§ 1446(a) and (d) and concurrently with the filing of this Notice of Removal, written notice of the filing will be served upon Plaintiff's counsel.  In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of Washington in and for King County.

**IV.     RESERVATIONS**

By filing this notice of removal, Whitepages does not waive any elemental challenge or defense that may be available to it and hereby expressly reserves all elemental challenges and defenses, including but not limited to: arbitrability, improper venue, *forum non conveniens*, insufficiency of process, lack of standing, failure to state a claim, and improper judge shopping. Whitepages disputes the Complaint in its entirety, including all factual and legal allegations and prayers for relief.  Whitepages reserves the right to amend or supplement this notice of removal if needed.

WHEREFORE, Whitepages removes this action to this Court.

NOTICE OF REMOVAL - 7
CASE NO.:

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1    Dated:    May 2, 2025

**GOLDFARB & HUCK ROTH RIOJAS, PLLC**

*/s/  Kimberlee L. Gunning*
Kimberlee L. Gunning, WSBA No. 35366
*/s/ R. Omar Riojas*
R. Omar Riojas, WSBA No. 35400
925 Fourth Avenue, Suite 3950
Seattle, WA  98104
Tele:    206.452.0260
Email:   gunning@goldfarb-huck.com
riojas@goldfarb-huck.com

**VEDDER PRICE P.C.**

Blaine C. Kimrey (*pro hac vice* application forthcoming)
Bryan K. Clark (*pro hac vice* application forthcoming)
222 N. LaSalle Street, Suite 2400
Chicago, IL  60601
Tele:    312.609.7500
Email:   bkimrey@vedderprice.com
bclark@vedderprice.com

*Attorneys for Defendant Whitepages, Inc.*

NOTICE OF REMOVAL - 8
CASE NO.:

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Robert Clark | Whitepages, Inc. |

| (b) County of Residence of First Listed Plaintiff    El Paso | County of Residence of First Listed Defendant    King |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF <br> THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Emery Reddy, PLLC <br> 600 Stewart Street, Suite 1100, Seattle, WA 98101 <br> (206) 442-9106 | Goldfarb & Huck Roth Riojas, PLLC <br> 925 Fourth Avenue, Suite 3950, Seattle, WA 98104 <br> (206) 452-0260 |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*     Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance <br> [ ] 120 Marine <br> [ ] 130 Miller Act <br> [ ] 140 Negotiable Instrument <br> [ ] 150 Recovery of Overpayment & Enforcement of Judgment <br> [ ] 151 Medicare Act <br> [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) <br> [ ] 153 Recovery of Overpayment of Veteran's Benefits <br> [ ] 160 Stockholders' Suits <br> [ ] 190 Other Contract <br> [x] 195 Contract Product Liability <br> [ ] 196 Franchise | **PERSONAL INJURY** <br> [ ] 310 Airplane <br> [ ] 315 Airplane Product Liability <br> [ ] 320 Assault, Libel & Slander <br> [ ] 330 Federal Employers' Liability <br> [ ] 340 Marine <br> [ ] 345 Marine Product Liability <br> [ ] 350 Motor Vehicle <br> [ ] 355 Motor Vehicle Product Liability <br> [x] 360 Other Personal Injury <br> [ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY** <br> [ ] 365 Personal Injury - Product Liability <br> [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability <br> [ ] 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> [ ] 370 Other Fraud <br> [ ] 371 Truth in Lending <br> [ ] 380 Other Personal Property Damage <br> [ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 <br> [ ] 690 Other | [ ] 422 Appeal 28 USC 158 <br> [ ] 423 Withdrawal 28 USC 157 <br> **INTELLECTUAL PROPERTY RIGHTS** <br> [ ] 820 Copyrights <br> [ ] 830 Patent <br> [ ] 835 Patent - Abbreviated New Drug Application <br> [ ] 840 Trademark <br> [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act <br> [ ] 376 Qui Tam (31 USC 3729(a)) <br> [ ] 400 State Reapportionment <br> [ ] 410 Antitrust <br> [ ] 430 Banks and Banking <br> [ ] 450 Commerce <br> [ ] 460 Deportation <br> [ ] 470 Racketeer Influenced and Corrupt Organizations <br> [ ] 480 Consumer Credit (15 USC 1681 or 1692) <br> [ ] 485 Telephone Consumer Protection Act <br> [ ] 490 Cable/Sat TV <br> [ ] 850 Securities/Commodities/ Exchange <br> [ ] 890 Other Statutory Actions <br> [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation <br> [ ] 220 Foreclosure <br> [ ] 230 Rent Lease & Ejectment <br> [ ] 240 Torts to Land <br> [ ] 245 Tort Product Liability <br> [ ] 290 All Other Real Property | [ ] 440 Other Civil Rights <br> [ ] 441 Voting <br> [ ] 442 Employment <br> [ ] 443 Housing/ Accommodations <br> [ ] 445 Amer. w/Disabilities - Employment <br> [ ] 446 Amer. w/Disabilities - Other <br> [ ] 448 Education | **Habeas Corpus:** <br> [ ] 463 Alien Detainee <br> [ ] 510 Motions to Vacate Sentence <br> [ ] 530 General <br> [ ] 535 Death Penalty <br> **Other:** <br> [ ] 540 Mandamus & Other <br> [ ] 550 Civil Rights <br> [ ] 555 Prison Condition <br> [ ] 560 Civil Detainee - Conditions of Confinement | [ ] 710 Fair Labor Standards Act <br> [ ] 720 Labor/Management Relations <br> [ ] 740 Railway Labor Act <br> [ ] 751 Family and Medical Leave Act <br> [ ] 790 Other Labor Litigation <br> [ ] 791 Employee Retirement Income Security Act | [ ] 861 HIA (1395ff) <br> [ ] 862 Black Lung (923) <br> [ ] 863 DIWC/DIWW (405(g)) <br> [ ] 864 SSID Title XVI <br> [ ] 865 RSI (405(g)) <br> **FEDERAL TAX SUITS** <br> [ ] 870 Taxes (U.S. Plaintiff or Defendant) <br> [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act <br> [ ] 896 Arbitration <br> [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision <br> [ ] 950 Constitutionality of State Statutes |
| | | | **IMMIGRATION** | | |
| | | | [ ] 462 Naturalization Application <br> [ ] 465 Other Immigration Actions | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Removed to this Court from King County Superior Court pursuant to the Class Action Fairness Act, 28 U.S.C. Sections 1332, 1441.

Brief description of cause:
Violation of Colorado Prevention of Telemarketing Fraud Act due to defendant's alleged listing of cell phone numbers on its website.

**VII. REQUESTED IN COMPLAINT:**
[x] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
At least $5,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):*    JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| May 2, 2025 | /s/ Kimberlee L. Gunning |

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)**

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related cases, if any.  If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

# EXHIBIT A

FILED
2025 APR 10 02:18 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-11215-2 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| ROBERT CLARK, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| WHITEPAGES, INC, a Delaware corporation, | |
| Defendant. | |

Plaintiff Robert Clark ("Plaintiff") individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendant Whitepages, Inc ("Whitepages" or "Defendant"). Plaintiff makes the following allegations pursuant to his counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## I.      NATURE OF ACTION

1.      On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a

---

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open. *See also* https://leg.colorado.gov/sites/default/files/images/olls/2005a_sl_180.pdf.

CLASS ACTION COMPLAINT - 1

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

directory, without permission.[2] *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2.      This prohibition is designed to protect privacy. As former State Representative Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3.      Indeed, concern over cell phone privacy is widespread. According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …
>
> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish to restrict access to their cell phone number to family and friends.[8]

4.      The Colorado General Assembly enacted subsection (4) of the PTFA to address these privacy concerns and to protect cell phone users from the misappropriation of their personal information. This aligns with the PTFA's overall purpose, as articulated by Colo. Rev. Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of

---

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.
[3] *See* https://www.leg.state.co.us/clics2005A/directory.nsf.
[4] https://lawcollections.colorado.edu/colorado-session-laws/islandora/object/session%3A36205 at p. 2461. *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.
[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.
[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.
[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=l2jkzr0AAAAJ&citation_for_view=l2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.
[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

5.      Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

(a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

6.      Despite this abundantly clear proscription, Defendant has listed the cellular telephone numbers of thousands of Colorado residents in its for-sale and for-profit directories, without requesting (let alone actually receiving) affirmative consent to such listings.

7.      Thus, while Defendant profits handsomely from its unauthorized commercial listing of Plaintiff's and other Class Members' personal information, it does so at the expense of Coloradans' statutory privacy rights, under the PTFA.

8.      Not only is Defendant's misappropriation unlawful – it is also dangerous. The Federal Trade Commission's ("FTC") report on "Data Brokers" states:

There are a number of potential risks to consumers from data brokers' collection and use of consumer data. … [T]hey may facilitate the sending of advertisements … which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, … people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely [m]ay [c]reate [s]ecurity [r]isks[.][9]

9.      Plaintiff brings this action to prevent Defendant from further violating the privacy rights of Colorado cell phone users and to recover statutory damages from Defendant, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

---

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

CLASS ACTION COMPLAINT - 3

## II.    PARTIES

10.    Plaintiff Robert Clark is a resident and citizen of Colorado Springs, Colorado. Plaintiff's cellular telephone number was listed by Defendant in its directory, available at whitepages.com, to advertise and/or actually sell products and services. Defendant never requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listing. In fact, Plaintiff has no relationship with Defendant whatsoever. Plaintiff had never heard of Defendant and had no reasonable ability to discover Defendant's use of his personal information until shortly before filing suit.

11.    Defendant Whitepages, Inc is a Delaware corporation with its principal place of business at 2033 6th Avenue, Suite 1100, Seattle, Washington 98121. Defendant operates the directory whitepages.com. Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

## III.    JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action pursuant to RCW 2.08.010.

13.    This Court has personal jurisdiction over Defendant because it maintains its principal place of business in King County, Washington.

14.    Venue is proper in this Court pursuant to RCW 4.12.025 because Defendant resides in King County, Washington.

## IV.    FACTUAL ALLEGATIONS

**A.    Overview of Defendant's Directory**

15.    Defendant is a data broker – a company "that collect[s] consumers' personal information and resell[s] or share[s] that information with others[.]"[10]

16.    Specifically, Defendant provides online "people search" (also known as "people finder") services. People search companies, like Defendant, specialize in compiling vast amounts

---

[10] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

of information about individuals from various sources.[11]

17.    Defendant and its competitors monetize said personal details through their directories – some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee.

18.    Defendant's directory is available at whitepages.com. There, anyone on the Internet can view Coloradans' "verified phone numbers, home addresses, email addresses, relatives, property records, background reports, and more."[12]

19.    This is achieved by simply searching an individual by name, city, state, phone number, address, and/or other parameters:[13]



20.    Users of whitepages.com can also find people listed by last name and city (i.e., those with the surname of "Anderson" in Denver):[14]

//

//

---

[11] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.
[12] https://www.whitepages.com/people-search.
[13] *Id.*
[14] https://www.whitepages.com/white-pages/denver-co/a.

CLASS ACTION COMPLAINT - 5

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711



21.     After entering this information, a whitepages.com user is furnished a list of search results. Each result corresponds to an actual person that Defendant has located who matches the searched parameters.[15]

---

[15] Note, in this image of whitepages.com's search results, Plaintiff's counsel has redacted certain sensitive personal information (black portions). Defendant, itself, also blurs certain information (pixelated portions) to entice users to purchase Defendant's full background reports and gain complete access.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

22.     Upon selecting a particular person to investigate from the search results, a whitepages.com user can access a free, limited preview of Defendant's paid, full background reports. Whitepages.com free, limited previews include searched individuals' cell phone number(s) and a plethora of other identifying information.[16]

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

---

[16] Note, in this image of whitepages.com's free, limited preview, Plaintiff's counsel has redacted certain sensitive personal information (blue portions). Defendant, itself, also blurs certain information (pixelated portions) to entice users to purchase Defendant's full background reports and gain complete access.

CLASS ACTION COMPLAINT - 7

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

23.     Defendant also makes available paid, full background reports that do not redact or blur searched individuals' sensitive personal information whatsoever – including cell phone numbers. Instead, they offer a comprehensive view into said individuals' private details.[17]



---

[17] Note, in this image of whitepages.com's paid, full background report, Plaintiff's counsel has redacted certain sensitive personal information (black portions).

CLASS ACTION COMPLAINT - 9

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

24.     As the above images of whitepages.com make clear, Defendant knowingly lists Coloradans' cell phone numbers. On whitepages.com, Defendant states: "We found [] verified phone numbers for [a particular person]. Phone numbers include both cell phones and landlines." Defendant encourages users to "View Cell Phone Numbers[.]" And Defendant does, in fact, provide phone numbers for what it correctly labels "Cell Phones."

25.     The purpose behind listing individuals' personal information – including cell phone numbers – on whitepages.com is twofold.

26.     First, listing said information helps Defendant generate ad revenue. Defendant advertises how pages are "Sponsored by Ancestry.com" (which, on information and belief, pays Defendant for that distinction), and Defendant advertises other third-parties' products and services (here, pet food being sold on Amazon).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

27.     Second, listing said information helps Defendant entice users to acquire access to Defendant's paid, full background reports.

28.     To acquire a full background report from Defendant, a whitepages.com user can either (a) pay a one-time fee of $11.99 for a single report or (b) pay a monthly subscription fee ranging from $5.99 per month to $109.99 per month:[18]



29.     Users can also access a 5-day trial membership for $1:



---

[18] https://www.whitepages.com/checkout/pricing.

CLASS ACTION COMPLAINT - 11

30. Thus, the listing of Plaintiff's and Class Members' cell phone numbers is for a commercial purpose. Indeed, that is Defendant's entire business model. Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers and subscribers.

**B. Defendant's Conduct Harms Coloradans**

31. Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[19] Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[20]

32. In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their personal data.[21]

33. These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data. Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their data.[22] A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing business with companies who they believe do not protect their

---

[19] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.
[20] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.
[21] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.
[22] *See, e.g.*, https://web.archive.org/web/20240202201259/https://www.enisa.europa.eu/publications/monetising-privacy/@@download/fullReport; https://citeseerx.ist.psu.edu/document?repid=rep1&type=pdf&doi=8b70320d110370c82ca9cbab768db58b74878234.

CLASS ACTION COMPLAINT - 12

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

privacy.[23] The same is true for 80 percent of smartphone users, who say that they avoid using smartphone apps that they don't believe protect their privacy.[24]

34.     Defendant's misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights. It also deprives them of the real, quantifiable value of such data.

35.     Further, "[p]eople search sites … offer a wealth of information that can be exploited by malicious actors."[25] For one, "[b]undling [personal data] all together and making it so easily accessible can … put ordinary people at risk of … stalking and other forms of harassment."[26] Second, people search sites' "comprehensive data allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[27] This "put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[28]

36.     Information disclosures like Defendant's are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[29] The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[30]

37.     Making matters worse, "[o]nce marked as receptive to [a specific] type of spam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[31]

---

[23] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.
[24] *Id.*
[25] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.
[26] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.
[27] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.
[28] http://www.nytimes.com/2007/05/20/business/20tele.html.
[29] *Id.*
[30] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.
[31] *Id.* at p. 3.

CLASS ACTION COMPLAINT - 13

## V.    CLASS ALLEGATIONS

38.    Pursuant to CR 23, Plaintiff seeks to represent a class defined as all Colorado residents whose cell phone numbers were listed on whitepages.com (the "Class").

39.    Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

40.    **Numerosity:** The Class is composed of at least thousands of individuals, the joinder of which in one action would be impracticable. The disposition of their claims through this class action will benefit both the parties and the Court.

41.    **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class. The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class Members. Such questions include, but are not limited to, the following: whether Defendant violated Colo. Rev. Stat. § 6-1-304(4)(a)(I); and whether Plaintiff and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

42.    **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because Plaintiff, like all other Class Members, had his cell phone number listed on whitepages.com for a commercial purpose; Defendant did so without requesting or receiving Plaintiff's affirmative consent (through written, oral, or electronic means); and Defendant's misappropriation of Plaintiff's personal data (including the economic value thereof) came at the expense of Plaintiff's PTFA privacy rights.

43.    **Adequacy:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

44.    **Superiority:** The class mechanism is superior to other available means for the fair

CLASS ACTION COMPLAINT - 14

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

and efficient adjudication of the claims of Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## VI.   CAUSE OF ACTION

### <u>COUNT I</u>
### VIOLATION OF THE PREVENTION OF TELEMARKETING FRAUD ACT, COLO. REV. STAT. § 6-1-304(4)(a)(I)

45.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

47.     Colo. Rev. Stat. § 6-1-304(4) provides:

(a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

48.     Defendant failed to comply with this PTFA mandate.

49.     Defendant knowingly lists Coloradans' cell phone numbers. On whitepages.com, Defendant states: "We found [] verified phone numbers for [a particular person]. Phone numbers include both cell phones and landlines." Defendant encourages users to "View Cell Phone

CLASS ACTION COMPLAINT - 15

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

Numbers[.]" And Defendant indeed provides phone numbers for what it correctly labels "Cell Phones."

50. Defendant's website, whitepages.com, is a directory – i.e., an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area[.]"[32] Defendant admits as much, referring to whitepages.com as a "directory service";[33] advertising that it offers "the most accurate online directory of contact information";[34] and titling pages with the word "directory."[35]

51. Defendant engages in this conduct for a commercial purpose. The purpose behind listing individuals' personal information – including cell phone numbers – on whitepages.com is to generate ad revenue and entice users to acquire access to Defendant's paid, full background reports.

52. Defendant never requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing[.]" Colo. Rev. Stat. § 6-1-304(4)(a)(I). Rather, Defendant lists the cell phone numbers of Coloradans it has never engaged with, has had no connection to, and who are unaware of its existence.

53. Defendant's misappropriation of Class Members' personal data (including the economic value thereof) came at the expense of Class Members' PTFA privacy rights. It deprived Class Members of the real, quantifiable value of such data. And it exposed Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing.

54. Thus, on behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3)

---

[32] *Directory*, Oxford Learner's Dictionary, https://oxfordlearnersdictionaries.com/us/definition/english/directory. *See also Directory*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, Cambridge Essential American English Dictionary, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, AllWords.com Multi-Lingual Dictionary, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").
[33] https://www.whitepages.com/privacy.
[34] https://www.whitepages.com/reverse-phone.
[35] *See, e.g.*, https://www.whitepages.com/white-pages/denver-co; https://www.whitepages.com/directory/name.

CLASS ACTION COMPLAINT - 16

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

55.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

56.    Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

57.    Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

58.    Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with the PTFA;

59.    Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

60.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

61.    Awarding such other and further relief as equity and justice may require.

//
//
//
//

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

Dated: April 10, 2025

Respectfully submitted,

**EMERY REDDY PLLC**

By: */s/ Timothy W. Emery*
Timothy W. Emery, WSBA No. 34078
Patrick B. Reddy, WSBA No. 34092
Paul Cipriani, WSBA No. 59991
600 Stewart St., Suite 1100
Seattle, WA 98101
Telephone: (206) 442-9106
Facsimile: (206) 441-9711
Email: emeryt@emeryreddy.com
Email: reddyp@emeryreddy.com
Email: paul@emeryreddy.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice* forthcoming)
Matthew A. Girardi (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
Email: mgirardi@bursor.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT - 18

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

ROBERT TUCKER, on behalf of himself and all others similarly situated,

        Plaintiff,

v.

WHITEPAGES, INC.,

        Defendant.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiff Robert Tucker ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendant Whitepages, Inc. ("Whitepages" or "Defendant").  Plaintiff makes the following allegations pursuant to his counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF ACTION

1.      On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a

---

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open.  *See also* https://leg.colorado.gov/sites/default/files/images/olls/2005a_sl_180.pdf.

directory, without permission.[2]  *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2.      This prohibition is designed to protect privacy.  As former State Representative Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3.      Indeed, concern over cell phone privacy is widespread.  According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …
>
> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish

---

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.

[3] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.

[4] https://lawcollections.colorado.edu/colorado-session-laws/islandora/object/session%3A36205 at p. 2461.  *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.

[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.

[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=I2jkzr0AAAAJ&citation_for_view=I2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.

to restrict access to their cell phone number to family and friends.[8]

4.      The Colorado General Assembly enacted subsection (4) of the PTFA to address

these privacy concerns and to protect cell phone users from the misappropriation of their

personal information.  This aligns with the PTFA's overall purpose, as articulated by Colo. Rev.

Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use
> of telephones for commercial solicitation is rapidly increasing; that this
> form of communication offers unique benefits, but entails special risks and
> poses the potential for abuse; that the general assembly finds that the
> widespread practice of fraudulent and deceptive commercial telephone
> solicitation has caused substantial financial losses to thousands of
> consumers, and, particularly, elderly, homebound, and otherwise
> vulnerable consumers, and is a matter vitally affecting the public interest;
> and, therefore, that the general welfare of the public and the protection of
> the integrity of the telemarketing industry requires statutory regulation of
> the commercial use of telephones.

5.      Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a)      On or after September 1, 2005, a person commits an unlawful
>          telemarketing practice if the person knowingly:
>
> > (I)      Lists a cellular telephone number in a directory for a
> >          commercial purpose unless the person whose number has
> >          been listed has given affirmative consent, through written,
> >          oral, or electronic means, to such listing[.]

6.      Despite this abundantly clear proscription, Defendant has listed the cellular

telephone numbers of thousands of Colorado residents in its for-sale and for-profit directories,

without requesting (let alone actually receiving) affirmative consent to such listings.

7.      Thus, while Defendant profits handsomely from its unauthorized commercial

---

[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

listing of Plaintiff's and other Class Members' personal information, it does so at the expense of

Coloradans' statutory privacy rights, under the PTFA.

       8.     Not only is Defendant's misappropriation unlawful – it is also dangerous.  The

Federal Trade Commission's ("FTC") report on "Data Brokers" states:

> There are a number of potential risks to consumers from data brokers'
> collection and use of consumer data. … [T]hey may facilitate the sending
> of advertisements … which some consumers may find troubling and
> which could undermine their trust in the marketplace. Moreover, …
> people search products can be used to facilitate harassment, or even
> stalking, and may expose domestic violence victims, law enforcement
> officers, prosecutors, public officials, or other individuals to retaliation or
> other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely
> [m]ay [c]reate [s]ecurity [r]isks[.][9]

       9.     Plaintiff brings this action to prevent Defendant from further violating the privacy

rights of Colorado cell phone users and to recover statutory damages from Defendant, pursuant

to Colo. Rev. Stat. § 6-1-305(1)(c).

## PARTIES

       10.    Plaintiff Robert Tucker is, and has been at all relevant times, a resident and citizen

of Arvada, Colorado.  Plaintiff's cellular telephone number was listed by Defendant in its

directory, available at whitepages.com, to advertise and/or actually sell products and services.

Defendant never requested – and Plaintiff never provided – affirmative consent, through written,

oral, or electronic means, to such listing.  In fact, Plaintiff has no relationship with Defendant

whatsoever.  Plaintiff had never heard of Defendant and had no reasonable ability to discover

Defendant's use of his personal information until shortly before filing suit.

---

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

11.     Defendant Whitepages, Inc. is a Delaware corporation with its principal place of business at 2033 6th Avenue, Suite 1100, Seattle, Washington 98121.  Defendant operates the directory whitepages.com.  Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. 1332(d) *et seq.* in that the proposed Class consists of over 100 people, the Classes are minimally diverse, on information and belief more than $5 million is at issue, and none of the exceptions to CAFA jurisdiction applies.

13.     The Court has personal jurisdiction over Defendant because Defendant regularly transacts business in Colorado and a substantial part of the events giving rise to the claims asserted herein occurred in Colorado.  Defendant's tortious conduct – listing the cellular telephone numbers of thousands of individuals whom Defendant knows to reside in Colorado, without requesting or receiving said individuals' affirmative consent – caused injury in Colorado and thus constituted a tort here.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in and was directed to this District. Venue is additionally proper because Plaintiff resides in Adams County, Colorado, which is in this District.

## LEGAL AND FACTUAL BACKGROUND

### I.    Overview of Defendant's Directory

15.    Defendant is a data broker – a company "that collect[s] consumers' personal information and resell[s] or share[s] that information with others[.]"[10]

16.    Specifically, Defendant provides online "people search" (also known as "people finder") services.  People search companies, like Defendant, specialize in compiling vast amounts of information about individuals from various sources.[11]

17.    Defendant and its competitors monetize said personal details through their directories – some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee.

18.    Defendant's directory is available at whitepages.com.  There, anyone on the Internet can view Coloradans' "verified phone numbers, home addresses, email addresses, relatives, property records, background reports, and more."[12]

19.    This is achieved by simply searching an individual by name, city, state, phone number, address, and/or other parameters:[13]

//

//

//

---

[10] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

[11] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.

[12] https://www.whitepages.com/people-search.

[13] *Id.*



20.     Users of whitepages.com can also find people listed by last name and city (i.e., those with the surname of "Anderson" in Denver):[14]



---

[14] https://www.whitepages.com/white-pages/denver-co/a.

21.    After entering this information, a whitepages.com user is furnished a list of search results.  Each result corresponds to an actual person that Defendant has located who matches the searched parameters.[15]



22.    Upon selecting a particular person to investigate from the search results, a whitepages.com user can access a free, limited preview of Defendant's paid, full background reports.  Whitepages.com free, limited previews include searched individuals' cell phone number(s) and a plethora of other identifying information.[16]

---

[15] Note, in this image of whitepages.com's search results, Plaintiff's counsel has redacted certain sensitive personal information (black portions).  Defendant, itself, also blurs certain information (pixelated portions) to entice users to purchase Defendant's full background reports and gain complete access.

[16] Note, in this image of whitepages.com's free, limited preview, Plaintiff's counsel has redacted certain sensitive personal information (blue portions).  Defendant, itself, also blurs certain information (pixelated portions) to entice users to purchase Defendant's full background reports and gain complete access.



23.    Defendant also makes available paid, full background reports that do not redact or blur searched individuals' sensitive personal information whatsoever – including cell phone numbers.  Instead, they offer a comprehensive view into said individuals' private details.[17]



---

[17] Note, in this image of whitepages.com's paid, full background report, Plaintiff's counsel has redacted certain sensitive personal information (black portions).

24.     As the above images of whitepages.com make clear, Defendant knowingly lists Coloradans' cell phone numbers.  On whitepages.com, Defendant states: "We found [] verified phone numbers for [a particular person]. Phone numbers include both cell phones and landlines." Defendant encourages users to "View Cell Phone Numbers[.]"  And Defendant does, in fact, provide phone numbers for what it correctly labels "Cell Phones."

25.     The purpose behind listing individuals' personal information – including cell phone numbers – on whitepages.com is twofold.

26.     First, listing said information helps Defendant generate ad revenue.  Defendant advertises how pages are "Sponsored by Ancestry.com" (which, on information and belief, pays Defendant for that distinction), and Defendant advertises other third-parties' products and services (here, pet food being sold on Amazon).



27.     Second, listing said information helps Defendant entice users to acquire access to

Defendant's paid, full background reports.

28.     To acquire a full background report from Defendant, a whitepages.com user can

either (a) pay a one-time fee of $11.99 for a single report or (b) pay a monthly subscription fee

ranging from $5.99 per month to $109.99 per month:[18]



29.     Users can also access a 5-day trial membership for $1:



---

[18] https://www.whitepages.com/checkout/pricing.

30.     Thus, the listing of Plaintiff's and Class Members' cell phone numbers is for a commercial purpose.  Indeed, that is Defendant's entire business model.  Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers and subscribers.

## II.     Defendant's Conduct Harms Coloradans

31.     Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[19]  Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[20]

32.     In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their personal data.[21]

33.     These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data.  Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of

---

[19] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[20] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.

[21] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

protecting their data.[22]  A 2014 survey conducted by Harris Interactive on behalf of TRUSTe,

Inc. showed that 89 percent of consumers avoid doing business with companies who they believe

do not protect their privacy.[23]  The same is true for 80 percent of smartphone users, who say that

they avoid using smartphone apps that they don't believe protect their privacy.[24]

     34.     Defendant's misappropriation of Coloradans' cell phone numbers undeniably

deprives state residents of the ability to enjoy their PTFA privacy rights.  It also deprives them of

the real, quantifiable value of such data.

     35.     Further, "[p]eople search sites … offer a wealth of information that can be exploited

by malicious actors."[25]  For one, "[b]undling [personal data] all together and making it so easily

accessible can … put ordinary people at risk of … stalking and other forms of harassment."[26]

Second, people search sites' "comprehensive data allows cybercriminals to build detailed profiles

of potential victims, making it easier to craft convincing scams or carry out identity theft."[27]  This

"put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[28]

     36.     Information disclosures like Defendant's are particularly dangerous to the elderly.

---

[22] *See, e.g.*, https://web.archive.org/web/20240420201259/https://www.enisa.europa.eu/publications/monetising-privacy/@@download/fullReport; https://citeseerx.ist.psu.edu/document?repid=rep1&type=pdf&doi=8b70320d110370c82ca9cbab768db58b74878234.

[23] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.

[24] *Id.*

[25] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[26] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.

[27] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[28] http://www.nytimes.com/2007/05/20/business/20tele.html.

"Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[29]  The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[30]

37.    Making matters worse, "[o]nce marked as receptive to [a specific] type of spam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[31]

## CLASS ALLEGATIONS

38.    Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class defined as all Colorado residents whose cell phone numbers were listed on whitepages.com (the "Class").

39.    Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

40.    **Numerosity:** The Class is composed of at least thousands of individuals, the joinder of which in one action would be impracticable.  The disposition of their claims through this class action will benefit both the parties and the Court.

41.    **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class.  The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class Members.  Such questions include,

---

[29] *Id.*
[30] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

[31] *Id.* at p. 3.

but are not limited to, the following: whether Defendant violated Colo. Rev. Stat. § 6-1-304(4)(a)(I); and whether Plaintiff and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

42.     **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because Plaintiff, like all other Class Members, had his cell phone number listed on whitepages.com for a commercial purpose; Defendant did so without requesting or receiving Plaintiff's affirmative consent (through written, oral, or electronic means); and Defendant's misappropriation of Plaintiff's personal data (including the economic value thereof) came at the expense of Plaintiff's PTFA privacy rights.

43.     **Adequacy:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

44.     **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability.  Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues.  Finally,

Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby

making it appropriate for this Court to grant final injunctive relief and declaratory relief with

respect to the Class as a whole.

## **CAUSES OF ACTION**

### **COUNT I**
**Violation of the Prevention of Telemarketing Fraud Act,**
**Colo. Rev. Stat. § 6-1-304(4)(a)(I)**

45.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Class against Defendant.

47.     Colo. Rev. Stat. § 6-1-304(4) provides:

    (a)    On or after September 1, 2005, a person commits an unlawful
        telemarketing practice if the person knowingly:

        (I)    Lists a cellular telephone number in a directory for a
            commercial purpose unless the person whose number has
            been listed has given affirmative consent, through written,
            oral, or electronic means, to such listing[.]

48.     Defendant failed to comply with this PTFA mandate.

49.     Defendant knowingly lists Coloradans' cell phone numbers.  On whitepages.com,

Defendant states: "We found [] verified phone numbers for [a particular person]. Phone numbers

include both cell phones and landlines."  Defendant encourages users to "View Cell Phone

Numbers[.]"  And Defendant indeed provides phone numbers for what it correctly labels "Cell

Phones."

50.     Defendant's website, whitepages.com, is a directory – i.e., an "electronic resource

containing lists of information, usually in alphabetical order, for example people's phone

numbers or the names and addresses of businesses in a particular area[.]"  *Directory*, Oxford

Learner's Dictionary, https://oxfordlearnersdictionaries.com/us/definition/english/directory.[32]

Defendant admits as much, referring to whitepages.com as a "directory service";[33] advertising

that it offers "the most accurate online directory of contact information";[34] and titling pages with

the word "directory."[35]

51.     Defendant engages in this conduct for a commercial purpose.  The purpose behind

listing individuals' personal information – including cell phone numbers – on whitepages.com is

to generate ad revenue and entice users to acquire access to Defendant's paid, full background

reports.

52.     Defendant never requests nor receives Coloradans' "affirmative consent, through

written, oral, or electronic means, to such listing[.]"  Colo. Rev. Stat. § 6-1-304(4)(a)(I).  Rather,

Defendant lists the cell phone numbers of Coloradans it has never engaged with, has had no

---

[32] *See also Directory*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, Cambridge Essential American English Dictionary, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, AllWords.com Multi-Lingual Dictionary, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").

[33] https://www.whitepages.com/privacy.

[34] https://www.whitepages.com/reverse-phone.

[35] *See, e.g.*, https://www.whitepages.com/white-pages/denver-co; https://www.whitepages.com/directory/name.

connection to, and who are unaware of its existence.

53.    Defendant's misappropriation of Class Members' personal data (including the economic value thereof) came at the expense of Class Members' PTFA privacy rights.  It deprived Class Members of the real, quantifiable value of such data.  And it exposed Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing.

54.    Thus, on behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

(a)    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

(b)    Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

(c)    Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

(d)      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with the PTFA;

(e)      Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

(f)      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

(g)      Awarding such other and further relief as equity and justice may require.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.

Dated:  December 18, 2024          Respectfully submitted,

                                   /s/ Patrick H. Peluso
                            One of Plaintiff's Attorneys

**PELUSO LAW LLC**
Patrick H. Peluso
865 Albion Street, Suite 250
Denver, CO 80220
Telephone: (720) 805-2008
Facsimile: (720) 336-3663
E-Mail: ppeluso@pelusolawfirm.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Matthew A. Girardi*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: jmarchese@bursor.com
          mgirardi@bursor.com

*Admission to be sought*

*Counsel for Plaintiff and the Putative Class*

ØŠÒÖ

ĠŒĠÁŤŒŸÁŒĠ
SŒÕÁÖUŴÞVŸ
ÙŴÚÒÜ۩ÜÁÖUŴÜVÁÕŠÒÜS

ÔŒÜÒÁÅŴŐÁĖŒĖFFGFĺÆÁÙÒŒ

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING**

| CLARK | No. 25-2-11215-2 SEA |
|---|---|
| VS | **CERTIFICATE OF E-SERVICE** |
| WHITEPAGES INC | |

I, Kimberlee Gunning, certify that I initiated electronic service of the following document(s) on the parties listed below who have consented to accept electronic service via the King County eFiling Application. Service was initiated on May 2nd, 2025 at 12:45 p.m.

Document(s):

1. Notice

Parties:

1. PaulCipriani, Attorney for Plaintiff
2. , E-Mail: paul@emeryreddy.com
3. PatrickReddy, Attorney for Plaintiff
4. , E-Mail: reddyp@emeryreddy.com
5. TimothyEmery, Attorney for Plaintiff
6. , E-Mail: emeryt@emeryreddy.com

Executed this 2nd day of May, 2025.

Certificate of E-Service (AFSRES)
Rev. 05/2023

Page 1

s/Kimberlee Gunning,   0  gunning@goldfarb-huck.com